## McKenna, Appellant, *v.* Atlantic Refining Company.

*Negligence—Master and servant—Safety appliance—Contributory negligence—Risk of employment.*

In an action by an oil gauger against his employer, an oil refining company, to recover damages for personal injuries sustained by reason of the escape of a current of gas from a tank which the plaintiff was gauging, a nonsuit is properly entered, where it appears that the plaintiff knew from his previous employment that gas escaped from the particular kind of oil which he was gauging, that he knew of a way of avoiding the current when he lifted the lid of the tank, that he had avoided such currents before, that there was nothing to show the absence of ventilating pipes in the tank, and nothing to show affirmatively that the ventilating pipes were necessary to the reasonable and proper use of the tank.

Argued Jan. 4, 1910. Appeal, No. 180, Jan. T., 1909, by plaintiff, from order of C. P. No. 2, Phila. Co., Dec. T., 1904, No. 411, refusing to take off nonsuit in case of Daniel P. McKenna, Administrator of the Estate of George Handforth, deceased, v. Atlantic Refining Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off, WILTBANK, J., filing the following opinion:

If this case went to the jury it would go on the issue whether or not the defendant company had been guilty of negligence to a degree which caused the injury to the man Handforth. If the company was guilty of such negligence it must be found by the jury that it arose upon their sending him to a tank, the contents of which he was to gauge whilst it was not duly equipped; in other words, the plaintiff must here show affirmatively that whilst he had accepted the employment for the time being of gauging oil and was legitimately about that

occupation he was confronted by a catastrophe due to the negligence of the defendant company in the structure and furnishing of the tank which confined the fatal gas.   This, therefore, brings us to the question whether or not, there being no evidence in the case of negligence in the building of the tank and the mode of the supply of the oil thereto, ventilating pipes were necessary to its reasonable and proper use.   The argument has turned mainly upon the presence or absence of ventilating pipes.   It has not been affirmatively shown with sufficient accuracy to justify its being left to the jury that the tank on the morning in question was without a pipe or pipes to produce ventilation.   But were we to assume, for the purposes of justice, that there was some show of evidence on this head necessarily for the jury, we would be confronted by the further difficulty that after all it had not been legally established that according to the ordinary and legitimate construction, operation and use of the tank, or of like tanks, ventilating pipes were a part of the fixture.   We have no evidence that the tank was not of the ordinary and usual character and such as would be found in plants employed in the department of commerce under review.   It appears, moreover, that the plaintiff had knowledge of a proper precaution by which to avoid the effect of the escaping gas.   This we learn from his own testimony.   He said that his companion in order to avoid danger stepped to a certain part of the three by five platform which appears to have been about the circular top of that tank, in order to carry himself beyond the draft which he found was disturbing the gas at the moment he put up the lid.   The plaintiff has testified that he observed this movement.   He saw it and, as I recall his testimony, he was himself about to step aside in the same spirit of caution when overcome.   The accident being thus shown to have been due to the current of air which set in the direction of these two men and which so controlled the fumes of the gas as and when they were emitted from the tank through the manhole opened by the fellow laborer, as to produce a recognized risk, I cannot adjudge him ignorant of the peril of the situation.   It also appears from the testimony produced by the plaintiff that he had that morning

gauged we will say many of the tanks before he reached the one in question. The evidence is clear upon this point. He had gauged with his companion, or with another witness here testifying, other tanks, and thus we have a further indication of his familiarity with the work. Besides this, according to his own story, he had been engaged in working over oils of various characters, which he has described, including the Texas reduced crude oil, and this has been his occupation for a long time; whereby presumptively and necessarily in the eye of the law he had acquired knowledge that gas was to be expected to arise from the oils referred to. He knew of the character of this oil, and as he knew of the structure of the tank, and as there is no affirmative evidence of the absence of ventilating pipes, or of the necessity of such pipes in the ordinary and usual course of business, it is my duty to enter a nonsuit.

*Error assigned* was refusal to take off nonsuit.

*S. Morris Waln*, with him *Thomas Biddle Ellis*, for appellant.—A company dealing with a substance so dangerous as gas must be held to a high degree of care and the exercise of every reasonable precaution in guarding against accidental injury: Shirey v. Consumers' Gas Co., 215 Pa. 399; Hartman v. Citizens' Nat. Gas Co., 210 Pa. 19; Olive Stove Works v. Gas Co., 210 Pa. 141; Wagner v. Chemical Co., 147 Pa. 475; McCoy v. Gas Co., 213 Pa. 367; Bardsley v. Gill, 218 Pa. 56.

*Simpson & Brown*, for appellee, cited: McHugh v. Steel Co., 219 Pa. 644; Bridge Co. v. Newberry, 96 Pa. 246; Hughes v. Leonard, 199 Pa. 123; Peterson v. R. R. Co., 217 Pa. 401; Cunningham v. Bridge Works, 197 Pa. 625; Smith v. Traction Co., 202 Pa. 54.

PER CURIAM, February 14, 1910:

The judgment in this case is affirmed on the opinion of Judge WILTBANK on entering a nonsuit.